UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NANCY B., [1]

                                    Plaintiff,             Case # 19-CV-6574-FPG

v.                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.

## INTRODUCTION

Plaintiff Nancy B. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 11. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In March 2016, Plaintiff protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 91. She alleged disability since August 2003. Tr. 92. On August 16, 2018, Administrative Law Judge Jonathan P. Baird (the "ALJ") issued a decision finding that Plaintiff was not disabled during the relevant period. Tr. 28-37. The Appeals Council

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

denied Plaintiff's request for review in June 2019.  Tr. 1-3.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through her date last insured, December 31, 2008.  Tr. 30.  At step two, the ALJ found that Plaintiff had severe impairments of fibromyalgia, migraines, meningioma, and degenerative disc disease.  Tr. 31.  At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment.  Tr. 32.

Next, the ALJ determined that Plaintiff retained the RFC to perform light work with additional limitations.  Tr. 33.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  Tr. 36.  At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  Tr. 36-37.  The ALJ therefore found that Plaintiff was not disabled.  *Id.*

**II.    Analysis**

Plaintiff raises several grounds for remand, but because it is dispositive, the Court need only address Plaintiff's argument concerning the functional limitations posed by her migraine headaches.  To account for her migraines, the ALJ included a limitation that Plaintiff was restricted to "simple, routine and repetitive tasks" with "no detailed instructions."  Tr. 33.  By his own admission, the ALJ did not rely on a medical source to conclude that Plaintiff's headaches would functionally limit her in that manner.  Instead, he added that limitation "as a common-sense restriction on the distracting effects of headaches on focus and concentration."  Tr. 34.  Plaintiff argues that the ALJ erred by including that restriction without the support of a medical opinion.

ECF No. 10-1 at 27-28.  The Court agrees that the ALJ's assessment of Plaintiff's migraines was erroneous.

During the relevant period, there are only a few treatment notes indicating that Plaintiff complained about, and sought treatment for, headaches.  In February 2004, she sought treatment for headaches, indicating that she had "severe headaches once a week."  Tr. 522.  In June 2006, she reported that muscle spasms in her back also caused "increasing headaches."  Tr. 538.  After the date last insured, Plaintiff more regularly sought treatment for her migraine headaches.  *See, e.g.*, Tr. 318, 393, 546-57, 644, 651, 792.  During these later visits, Plaintiff reported that she had a "very long history of headaches."  Tr. 651; *see also* Tr. 792.  At the February 2018 hearing, Plaintiff similarly reported that, during the relevant period, she was having headaches "all the time" that did not vary in severity and were "just real bad."  Tr. 53.  When Plaintiff had a headache, she became "very sensitive to sound and light," "[got] really miserable," and needed to isolate herself "from everything."  *Id.*

In his decision, the ALJ found that Plaintiff's migraines were a severe impairment prior to the date last insured.  Tr. 31.  This was consistent with the medical opinions in the record: medical consultant J. McWatters, M.D., reviewed Plaintiff's file and diagnosed her with migraine headaches, Tr. 617, as did Plaintiff's treating physician, Zachary Suter, M.D.  Tr. 512.  Concerning the functional limitations posed by the migraines, the ALJ wrote:

> As for [Plaintiff's] migraines, prior to [her] date last insured, she was reporting headaches on the left side of her head that were severe approximately once per week.  Following [the] date last insured, imaging reports confirmed a meningioma and removal surgery in 2016.  [Plaintiff] testified that this condition got worse following surgery in 2016, which was well after her date last insured.  The restriction to simple, routine and repetitive work without detailed instructions is based upon this condition, as a common-sense restriction on the distracting effect of headaches on focus and concentration.

Tr. 34 (internal citations omitted).   Thus, the ALJ apparently credited the contemporaneous treatment notes (*see* Tr. 522); concluded that Plaintiff was suffering from one severe headache per week; and found that the weekly headaches were of sufficient seriousness as to justify a restriction to simple work.  *See* Tr. 34.

As Plaintiff points out, no medical opinion provides support for this functional restriction: Dr. McWatters includes no such restriction in his RFC assessment, and Dr. Suter's opinion contains far more restrictions.  *See* Tr. 512-16, 617-24.  Indeed, the ALJ candidly acknowledges that he arrived at it through the use of common sense.  *See* Tr. 34.  The question is whether this was permissible under the circumstances.  The Court concludes that it was not.

As a general matter, "an ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson.  While an ALJ may render common sense judgments about functional capacity, [he] must avoid the temptation to play doctor."  *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted); *see also Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y.  Mar. 6, 2015) ("[W]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as a general rule, the Commissioner may not make the connection himself." (internal quotation marks omitted)).  An ALJ "may not interpret raw medical data in functional terms," *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018), and for that reason, it is only where the claimant shows "relatively little physical impairment" that an ALJ may infer functional limitations from the medical evidence.  *House v. Astrue*, No. 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013).  Nevertheless, it bears emphasizing that an ALJ is otherwise free to make common sense

inferences from the record.  *See, e.g.*, *Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (summary order) (noting that ALJ could reasonably infer from claimant's own testimony that she did not need to "elevate her feet/knees for two hours on a daily basis"); *Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018) (ALJ drew permissible inferences from claimant's daily activities to conclude that claimant could perform light work).

Here, it could be argued that the functional limitations the ALJ imposed for Plaintiff's migraines were matters of common sense.  The ALJ's logic has some appeal: Plaintiff reported that she suffered from a severe headache once per week, and, as every layperson knows, headaches can have a "distracting effect . . . on focus and concentration."  Tr. 34.  The ALJ apparently concluded that, so long as the work was simple and repetitive, Plaintiff could work through the pain of the headaches and continue to complete her work.

However, even if the ALJ could permissibly reach this conclusion without a medical opinion, the ALJ's assessment of Plaintiff's migraines was still erroneous.  This is because the ALJ appears to have failed to account for other alleged symptoms of Plaintiff's headaches— specifically, her sensitivity to light and sound, and the concomitant need to isolate herself.  *See* Tr. 53.  Nowhere in the decision does the ALJ acknowledge Plaintiff's testimony, which leaves the Court with the impression that he simply failed to consider these aspects of Plaintiff's headaches. That would constitute error.  *See* 20 C.F.R. § 404.1529(a) (noting that the Commissioner must consider "all [the claimant's] symptoms" in determining whether the claimant is disabled).

To be sure, an ALJ's failure to fully express his reasoning does not, standing alone, "justify remand so long as the Court can glean the rationale of the decision."  *Vacanti v. Comm'r of Soc. Sec.*, No. 18-CV-368, 2020 WL 836387, at *2 (W.D.N.Y. Feb. 20, 2020).  Here, however, the Court cannot glean any rationale for the ALJ's omission.  To the extent the ALJ implicitly credited

Plaintiff's claim of light and sound sensitivity, the Court cannot discern how a restriction to simple work sufficed to account for those symptoms. Light and sound sensitivity would seem to demand different restrictions, like a quiet or dark work environment or additional off-task time. To the extent the ALJ implicitly rejected Plaintiff's claim of light and sound sensitivity, the Court cannot discern why he did so. In either scenario, the ALJ failed to articulate at least some basis for his decision-making, which constitutes error. "[A]n ALJ's discussion must be sufficiently articulated to allow for meaningful judicial review," *id.* (internal quotation marks omitted), which generally requires the ALJ to "build an accurate and logical bridge from the evidence to [his] conclusion." *Hayton v. Comm'r of Soc. Sec.*, No. 18-CV-6130, 2019 WL 2442150, at *3 (W.D.N.Y. June 12, 2019).

Accordingly, the Court concludes that the ALJ failed to sufficiently justify and explain the functional restrictions he imposed to account for Plaintiff's migraine headaches. Remand for further proceedings is therefore warranted. In addition, remand will afford the ALJ a new opportunity to consider and weigh Dr. Suter's medical opinion. *See* Tr. 512-16. The ALJ gave this opinion no weight because it was dated January 2018 and he did not interpret it to be retrospective. *See* Tr. 35. To the contrary, the opinion was explicitly retrospective and relevant to the period at issue, *see* Tr. 515, and so the ALJ should have considered it and weighed it according to the usual factors. *See Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 15-16 (2d Cir. 2018) (summary order) ("[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence.").

**CONCLUSION**

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED.   This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).   The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 24, 2021
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court